UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| GENARD DENEZ CHESTNUT,<br><br>　　　Plaintiff,<br><br>v.<br><br>COLIN WILLIAMS, ROBERT BROWN, STEVEN LOLA, ROBERT ATTEBERRY, ROSEANNA SINGLETARY, and KATHERINE BURGIN, individually,<br><br>　　　Defendants. | Case No. 3:22-cv-1349 |

**COMPLAINT FOR DAMAGES**

Plaintiff sues all Defendants and alleges:

**Jurisdiction And Venue**

1. Plaintiff sues pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the First and Eighth Amendments to the U.S. Constitution. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

3. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), this being the district where the claim arose.

4. All conditions precedent to this lawsuit, including exhaustion of administrative remedies, have occurred, been performed, or been waived.

## Parties

5. At all times material hereto, Plaintiff GENARD DENEZ CHESTNUT was an inmate in the custody and care of the Florida Department of Corrections.

6. At all times material hereto, COLIN WILLIAMS was a correctional sergeant at Florida State Prison. He is sued individually.

7. At all times material hereto, ROBERT BROWN was a correctional sergeant at Florida State Prison. He is sued individually.

8. At all times material hereto, STEVEN LOLA was a correctional captain at Florida State Prison. He is sued individually.

9. At all times material hereto, ROBERT ATTEBERRY was a correctional sergeant at Florida State Prison. He is sued individually.

10. At all times material hereto, ROSEANNA SINGLETARY was a Licensed Practical Nurse working at Florida State Prison. She is sued individually.

11. At all times material hereto, KATHERINE BURGIN was a Licensed Practical Nurse working at Florida State Prison. She is sued individually.

12. All the above Defendants were acting under color of law.

## Common Allegations of Fact

**A. Culture of Violence at Florida State Prison**

13. The Department, and particularly Florida State Prison, also undermine the free speech and due process of many inmates, particularly Black inmates, who are threatened and physically harmed for complaining about officer misconduct.

14. Florida State Prison (FSP) permits officers and medical staff to deny

due process and necessary care by fabricating "refusals" of participation in due process hearings and medical and mental health diagnosis and treatment.

15. The isolation of Confinement and Close Management at FSP also gives free rein to white supremacists and sadistic and predatory guards who torment prisoners through sexual humiliation, denial of food, false charges and fictitious excuses for uses of force, exposure to cold, to chemical agents, and "strip cell."

16. Inmates in confinement are frequently denied showers and recreation, phone calls, visits, education, based on fabricated charges. Mail, including legal mail and grievances are tampered with and intercepted. Searches are often opportunities to destroy property including family pictures and legal work. Incompatible inmates are often housed together and forced to fight each other for entertainment.

17. As the numbers of prisoners in Florida decline, the numbers of prisoners who die in prison, often under questionable circumstances, increase. In 2020, around 590 prisoners died – about twice as many as five years earlier.

18. During 2018, Genard Chestnut was a prisoner housed in confinement at FSP. He had a long history of filing grievances and legal actions and became the target of a group of officers who were notorious for brutality and racial animus.

19. Plaintiff Chestnut responded to the brutality and racism by writing grievances and filing legal actions against the most brutal prison guards when he was threatened or physically abused and frequently suffered more abuse for his efforts.

20. Inmates who, like Plaintiff Chestnut, suffer from mental illness, are intended to be assisted in negotiating the difficulties of prison life, and especially in

dealing with prison guards by mental health professionals who are trained to do Crisis Intervention and De-Escalation, but in practice very little is actually done.

21. Medical and mental health professionals in Florida Prisons in general and FSP in particular, generally show tremendous deference to abusive prison guards and turn a blind eye to their abuses – sometimes even join in them.

**B. Assault against Plaintiff on December 7, 2018**

22. On December 7, 2018, Plaintiff was awaiting transfer to Suwannee Correctional Institution. Plaintiff waited in a holding cell area behind the control room at Florida State prison all morning and evening.

23. When he was initially placed in this area, Sgt. Colin Williams and Sgt. Robert Brown closed the door so the camera aimed at the area could not see inside.

24. Sgt. Colin Williams struck plaintiff in the holding cell with a closed fist stating, "you think you got away? I've killed people before. I'll stab you to death and plant a knife on you." Williams and Sgt. Robert Brown had frequently threatened Chestnut for writing grievances and filing lawsuits.

25. Plaintiff was left in the holding cell all day. That afternoon, Sgt. Robert Atteberry appeared, although he had no legitimate business coming to the holding cell area at that time, and threatened Plaintiff to the effect that, "We've got something for you. We'll have you fucked up before you leave here."

26. Shortly afterwards, Capt. Lola, Sgt. Williams, and Sgt. Brown entered the holding cell area. Sgt. Williams closed the door and told Plaintiff to strip down to his boxers. Sgt. Williams threatened to "paint the cell red" with Plaintiff's blood.

4

Williams and Lola then beat Plaintiff with their fists. Sgt. Brown wrestled Plaintiff to the ground and began beating him with handcuffs, using them as brass knuckles. At one point, part of the open metal handcuffs contacted and slightly penetrated Plaintiff's rectum. At this point, Plaintiff lost control of his bowels, soiling his boxers.

27. Capt. Lola began kicking Plaintiff in the head, chest, and face and Officer Brown beat him with handcuffs and Sgt. Williams punched Plaintiff with closed fists and banged his head into the floor. The officers beat Plaintiff until they were tired. They then called for backup and Capt. Lola walked out of the holding cell area to give a cover story for the beating.

28. Other officers responded, placing Plaintiff in handcuffs. Plaintiff lost consciousness for a time but came to was brought out of the holding cell wearing nothing but boxers and cuffed behind his back. Capt. Lola ordered the officers to put him back in the holding cell to get him dressed.

29. Capt. Lola said he would call his friends at Suwannee and tell them to finish taking care of Plaintiff, adding "You better keep your mouth shut!"

30. Plaintiff was escorted to medical to receive stitches over his eyes. His head and the area around his eyes were swollen with many knots, chipped teeth, visible head injuries and experienced continuing dizzy spells and blurred vision.

31. Plaintiff was minimally treated by LPN Roseanna Singletary, who failed to fully document the injuries suffered by Plaintiff.

32. Later, after Plaintiff was taken to Suwannee C.I., it was arranged for another nurse at FSP, LPN Katherine Burgin, to document a wholly fictitious

account of the post use of force examination as if she had done it herself, although she was not even present at the examination at Florida State Prison.

33. Sgt. Williams and Officer Brown signed false disciplinary reports to cover-up the assault. In the disciplinary reports they said they were placing Plaintiff in full restraints to put him into the transport van when Plaintiff attempted to strike an officer and they had to place him on the ground.

34. All the visible injuries and blood shown on the hand-held camera will show that the reports that force had to be used on Plaintiff as he was being prepared for transport were falsified to cover-up a criminal assault.

35. Plaintiff was not being readied for transport. Inmates are not transported in their boxers and they are not transported with their hands cuffed in back; rather they are restrained with a black box, a waist chain, and cuffs in front.

36. After Plaintiff was transferred to Suwannee CI, Plaintiff had fewer than five uses of force in an entire year and fewer than five DRs. But at FSP, officers used force on him every week or numerous times per month for more than a year.

37. The abuse at FSP was part of a pattern of abuse by a group of security officers who routinely indulge in brutal acts against prisoners at Florida State Prison in retaliation for expressions of protected speech, including grievances on abuse.

38. These groups of security officers have been referred to as a "negative subculture" by use of force auditors. They have a long history of misconduct at Florida State Prison, particularly with inmates who write grievances, like Chestnut.

39. The history goes back years. On April 4, 5, 9, and 10, 2018, Sgt. Robert

Atteberry used to place empty covered trays in Plaintiff's food slot, saying he would starve Chestnut to death, banging on Plaintiff's cell window saying it was on behalf of his brother guards. Sgt. Atteberry repeatedly told Plaintiff he'd teach Chestnut a lesson for "fucking with his brothers and snitching on officers."

40. As noted, Atteberry bragged to Plaintiff that he would have Plaintiff "fucked up" before he left the institution.

41. Over his time there, Florida State Prison staff continuously taunted and threatened Plaintiff, threatening serious harm on behalf of themselves and their colleagues against whom Plaintiff had written grievances.

## Causes of Action

**I.   Violation of 42 U.S.C. § 1983 for First Amendment Retaliation**

Plaintiff re-alleges the Common Allegations of Fact.

42. Plaintiff is entitled to relief against Defendants Atteberry, Williams, Brown, and Lola for threats and acts designed to chill the exercise of speech and redress (such as grievances) and acts as retaliation for having previously exercised protected speech and redress such that a person of ordinary firmness would normally refrain from fully expressing such speech.

43. Plaintiff was physically abused and threatened for writing grievances and for prosecuting civil rights lawsuits against abusive corrections officials. defendants taunted him and explicitly made clear to him the threats and abuses were retaliation for grievances and complaints he had made in the past.

44. As a direct and proximate result of these defendants' unlawful acts,

Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations of fact above.

45. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## II. Violation of 42 U.S.C. § 1983 for Excessive Force

Plaintiff re-alleges the Common Allegations of Fact.

46. Plaintiff is entitled to relief against Defendants Brown, Williams, and Lola for excessive force in violation of the Eighth Amendment as more fully described in the common allegations of fact, above.

47. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations, sections A and B above.

48. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## III. Violation of 42 U.S.C. § 1983 for Supervisor Liability

Plaintiff re-alleges the Common Allegations of Fact:

49. Plaintiff is entitled to relief against Defendant Lola for deliberate indifference toward his subordinates' acts of excessive force without penological

purpose and acts intended to chill and retaliate for protected speech and efforts at redress such that a person of ordinary firmness would refrain from fully exercising such speech, as further specified by Section B above.

50. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered various emotional and physical injuries, anxiety, distress and physical pain, as described more fully in Section B above.

51. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## IV. Violation of 42 U.S.C. § 1983 for Failure to Intervene

Plaintiff re-alleges the Common Allegations of Fact:

52. Plaintiff is entitled to relief against Defendants Williams, Brown, and Lola for, in addition to their own excessive force, failed to intervene to prevent abuse by the others, though able.

53. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Section A and B above.

54. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## V. Violation of 42 U.S.C. § 1983 for Failure to Protect

Plaintiff re-alleges the Common Allegations of Fact:

55. Plaintiff is entitled to relief against each of the Defendants Lola, Williams, and Brown for failure to protect Plaintiff from harm by the others by excessive force or acts designed to chill the exercise of speech and redress and as retaliation for having previously exercised protected speech and redress.

56. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Section B above.

57. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## VI. Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983

Plaintiff re-alleges the Common Allegations of Fact:

58. Plaintiff is entitled to relief against Defendants Atteberry, Lola, Williams, Brown, Singletary, and Burgin for conspiring to violate the rights of the Plaintiff by acts designed to achieve a personal goal and carry out a criminal purpose.

59. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Section B above.

60. Plaintiff has been required to engage the services of the undersigned

counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## VII. Abuse or Neglect of a Vulnerable Adult § 415.1111, Fla. Stat. (Lola, Williams, and Brown)

Plaintiff re-alleges the Common Allegations of Fact.

61. Plaintiff is entitled to relief against Defendants Lola, Williams, and Brown, under the Adult Protective Services Act, § 415.1111, Florida Statutes as described more fully in section B above.

62. Plaintiff met the definition of a "vulnerable adult" in that he was an adult whose ability to perform the normal activities of daily living or to provide for his own care was impaired due to a mental health impairment.

63. The above Defendants assumed the responsibility for a caregiver relationship, involving the regular and frequent care of Plaintiff.

64. Defendants had a duty to avoid acts or omissions that caused significant impairment to Plaintiff's mental and physical health.

65. Defendants had a duty to provide care, supervision and services necessary to Plaintiff, including food, shelter, needed medical care, and hygiene.

66. Defendants breached that duty of care by abusive and neglectful acts that could reasonably be expected to cause serious physical and mental injury.

67. Defendants breached their duties to Plaintiff by:

    a. Acting in a way that caused or was likely to cause significant impairment to Plaintiff's physical, mental, and emotional health;

    b. As to supervisors, failing to properly supervise and discipline employees involved in the custody and care of vulnerable inmates;

    c. Failing to follow normal and accepted humane corrections practices and procedures relating to the safe care of vulnerable inmates;

    d. Failing to provide care, supervision, and services necessary to maintain the physical and mental health of Plaintiff, including supervision, monitoring and medical care, that a prudent person would consider essential for the well-being of a vulnerable adult;

68. As a direct and proximate result of Defendants' breach of duty to the Plaintiff, Plaintiff suffered severe physical and mental injuries.

69. Defendants' acts and omissions as stated above constitute "abuse" as that term is defined in § 415.102(1), Florida Statutes, as well as "neglect" as that term is defined in § 415.102(15), Florida Statutes.

70. Pursuant to § 415.1111, Florida Statutes, Plaintiff is entitled to actual damages from Defendant, as well as attorneys' fees and costs.

71. Plaintiffs will seek punitive damages provided for in the statute.

WHEREFORE, Plaintiff prays for relief as set forth below.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests of the Court:

    A. Compensatory damages in an amount to be determined, including damages for physical injury and mental pain and suffering;

    B. Punitive damages against the individual defendants for their malicious and unconscionable actions depriving Plaintiff of his constitutional rights;

    C. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

    D. Trial by jury on all counts so triable; and

    E. Any further relief this Court deems just and proper.

Respectfully submitted on 12/7/22,   *s/ James V. Cook*
                                                      JAMES V. COOK, ESQ.
                                                      Florida Bar Number 0966843
                                                      Law Office of James Cook
                                                      314 West Jefferson Street
                                                      Tallahassee, Florida 32301
                                                      (850) 222-8080; 561-0836 fax
                                                      cookjv@gmail.com

                                                      ATTORNEY FOR PLAINTIFF