UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GENARD DENEZ CHESTNUT,

    Plaintiff,

v.

COLIN WILLIAMS, *et al.*,

    Defendants.

Case No. 3:22-cv-1349-BJD-LLL

**PLAINTIFF'S RESPONSE IN OPPOSTION TO
DEFENDANTS' MOTION TO STRIKE**

Plaintiff Genard Chestnut, by and through counsel, hereby responds in opposition to Defendants Colin Williams, Steven Lola, and Robert Atteberry's ("Defendants") Motion to Strike (Doc. 12), and states the following in support thereof:

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 2022, Plaintiff, a state prisoner then incarcerated at Florida State Prison (FSP), commenced this action by filing a Complaint (Doc. 1), alleging that several correctional officers and medical staff members violated his constitutional rights on or about December 7, 2018. Plaintiff asserts the defendants violated Plaintiff's rights through use of excessive force, retaliation intended to impede Plaintiff's First Amendment rights, and failure to intervene in the violation of his rights and injury to him. (*See, generally, id.*).

On March 13, 2023, Defendants filed a motion to strike, in which they ask the Court to strike paragraphs 13-17 and 20-21 of Plaintiff's Complaint. (Doc. 12). Defendants suggest that the Court should strike background and context from Plaintiff's Complaint, which is used to explain a history of misconduct and mistreatment in Florida prisons, and particularly toward inmates who, like Plaintiff, have special mental health care needs.

In their motion, Defendants reference a parallel proceeding in this District involving injuries preceding the ones in this Complaint. (*Id.* Page ID 59).[1] In that case, these defendants moved to strike similar paragraphs of context. In response Plaintiff amended his complaint to re-allege background matters but with citations to newspaper articles and journals evidencing the history of racism and violence in Florida prisons. Defendants did not renew their motion to strike in that case.

## II.     MEMORANDUM OF LAW

### a.  Applicable legal standard.

The court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters," but it is not a vehicle for a party to "procure the dismissal of all or part of a complaint." *Schmidt v. Life Ins. Co. of North America*, 289 F.R.D. 357, 358 (M.D. Fla. 2012) (quotation omitted). As such, motions to strike are "drastic

---

[1] Plaintiff intends to move to consolidate these cases now that counsel has appeared. The cases involve similar parties and conduct at FSP.

remed[ies] and [are] disfavored by the courts." *Id.* (citing *Reyher v. Trans World Airlines*, 881 F.Supp. 574, 576 (M.D.Fla.1995). "[A] motion to strike should be granted only if 'the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Id.* (quoting *Reyher*, 881 F.Supp. at 576). Further, "motions to strike are not favored, are 'time wasters,' and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Williams v. Wal-Mart Assocs. Inc.*, No. 2:12-cv-03821-AKK, 2013 WL 979103, at *4 (N.D. Ala. Mar. 8, 2013) (quoting *Parsons v. Nationwide Mut. Ins. Co.*, 889 F. Supp. 465, 470 (M.D. Fla. 1995).

### b.  The allegations at issue.

#### i.  Paragraph 13.

Paragraph 13 of the Complaint—under the heading "Culture of Violence at Florida State Prison"—asserts that there is an institutional culture of reprisal for protected First Amendment activity, particularly for Black prisoners. In their motion, Defendants assert both this paragraph is unsupported by factual allegation and that it is immaterial to the instant case. Neither reason Defendants rely upon are sufficient for a motion to strike.

An allegation should not be stricken merely because a defendant challenges their factual basis. *See Colodny v. Iverson, Yoakum, Papiano*, 838 F.Supp. 572, 575 (M.D. Fla. 1993) (citing *Brokke v. Stauffer Chem. Co.*, 703 F. Supp. 215, 223 (D.Conn.

1988)). It is important to view the context in which the paragraph lies. *See Kapow of Boca Raton, Inc. v. Aspen Specialty Ins. Co.*, No. 17-cv-80972-BLOOM/Hopkins, 2017 WL 5159601 (S.D. Fla. Nov. 7, 2017). Paragraph 13 refers to FSP, where the Defendants were employed during the events at issue in this case. (Doc. 1 ¶¶ 6, 8-9). The allegations underlying the Complaint include that Plaintiff—who is Black—was threatened (*see id.* at ¶¶ 23-26, 29), physically harmed (*see id.* at ¶ 27), and that the threats and harm were committed in retaliation for Plaintiff's grievances against the defendants. Paragraph 13 provides the context and atmosphere for the specific allegations rendered against Defendants, which is further explained in other paragraphs of the Complaint. *Jolly v. Hoegh Autoliners Shipping AS*, 546 F. Supp. 3d 1105, 1119 (M.D. Fla. 2021) (denying a motion to strike allegations that provided "context" to the claims); *Jones v. Heritage-Crystal Clean, LLC*, No. 8:16-CV-623-T-33JSS, 2016 WL 4063396, at *3 (M.D. Fla. July 29, 2016) (the allegations were not "redundant, immaterial, impertinent, or scandalous" but "[r]ather, the allegations in question provide helpful context and background information"). Paragraph 13 should not be stricken.

### ii. Paragraphs 14 and 16.

Defendants ask the Court to strike Plaintiff's allegation in paragraphs 14 and 16 of the "culture of violence" section of the Complaint regarding medical staff and officers at FSP denying due process, mistreating prisoners, fabricating records related to health treatment and other matters, and placing prisoners in confinement based on fabrication. In their motion, Defendants assert that Plaintiff does not allege that they

4

personally fabricated a refusal by Plaintiff to participate in treatment. (Doc. 12 PageID 60). Defendants also claim that background on confinement and punishment would confuse the issues. (*Id.* PageID 62). To prevail here, Defendants must show that there is "no possible relationship to the controversy. . . ." *Schmidt*, 289 F.R.D. at 358. *First,* Plaintiff plainly states that Defendant Burgin documented a wholly fictitious account of the post use of force examination. (Doc. 1 ¶ 32). The allegations in paragraph 14 are contextual and relevant to the claims concerning the conspiracy to cover up the injuries and attack on Plaintiff *in this case*. *Jolly*, 546 F. Supp. 3d at 1119; *Jones*, 2016 WL 4063396, at *3. Whether Plaintiff amended similar contextual language in a parallel proceeding involving some of these defendants is not material to this case—as that proceeding does not involve a coverup by correctional officers and medical staff. *Second*, Plaintiff alleges that he was in confinement and that he experienced brutality and racial animus as a result of his legal actions and grievances. (Doc. 1 ¶ 18). The context from paragraph 16 helps explain how a prisoner like Plaintiff would end up in confinement—for example, as punishment for protected First Amendment activity premised on false charges.

### iii. Paragraph 15.

Defendants assert that paragraph 15 of Plaintiff's Complaint—which discusses how FSP permits white supremacist and sadistic guards to have free rein to torment prisoners like Plaintiff, including through sexual humiliation and "strip cell"—is needlessly inflammatory and unsupported. But Plaintiff alleges in the Complaint that Defendants Lola, Williams, and Brown, ordered Plaintiff to strip down to his boxers

5

and threatened him. (Doc. 1 ¶ 26). In that same instance, Plaintiff was beaten in such a way that an open metal handcuff penetrated his rectum. (*Id.* at 1 ¶ 26). The context of paragraph 15 is not only important background, but it is supported by the allegations in the Complaint. While Plaintiff does not allege in this complaint that white supremacy underlies this incident, he may certainly use the factual allegations contained in paragraph 15 to support a finding of individual animus and intent or motivation to substantiate his claims. *See Williams,* 2013 WL 979103. And as defense counsel knows, Plaintiff has otherwise alleged that FSP staff, including Defendant Atteberry have held themselves out as white supremacists. *See Chestnut I*, at Doc. 29.

### iv.   Paragraph 17

Defendants argue essentially that because this is not a wrongful death case, Plaintiff cannot provide context for the number of prisoner deaths in Florida state prisons. (Doc. 12 PageID 62–63). The context is helpful to show that Plaintiff could have been one of those statistics based on the extreme and shocking violence perpetrated by Defendants. Specifically, Plaintiff alleges in the Complaint that Defendants issued death threats to him and statements by Defendant Williams to Plaintiff: "you think you got away? I've killed people before. I'll stab you to death and plant a knife on you." (Doc. 1 ¶ 24). This paragraph provides cultural context for the legitimate fear that such threats would have put Plaintiff in after receiving them, and are in that sense very much relevant and material. Whether statistics or specific instances of suspicious deaths throughout the state prison system are admissible at

trial are better addressed before or at trial under the Federal Rules of Evidence rather than addressed in a motion to strike. Paragraph 17 should not be stricken.

### v. Paragraphs 20 & 21.

In their motion to strike, Defendants argue that paragraphs 20 and 21—concerning the realities facing mentally ill prisoners like Plaintiff, including medical professionals turning a blind eye to prisoner abuses—are inflammatory and have little do with Plaintiff's claims. (Doc. 12 PageID 63). Plaintiff alleges that he has a mental illness (Doc. 1 ¶ 20), and that after he was assaulted Defendant Singletary did not fully document the injuries or treat them, and Defendant Burgin falsified a document related to the post-use of force examination. (*Id.* at ¶¶ 31–32). While the claims Plaintiff raises do not require a showing of systemic indifference, Plaintiff may certainly rely on patterns of behavior to show that medical staff were deferential to the correctional officers in this instance. Paragraphs 20 and 21 provide that very context in which Defendants Singletary and Burgin were operating in, and the context in which Plaintiff lived, where he could not trust those entrusted to his care to provide actual health services.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion to strike (Doc. 12) be denied.

Dated: March 16, 2023.

Respectfully submitted,

LAW OFFICE OF JAMES COOK

By: */s/ James V. Cook*
    James V. Cook (FBN 0966843)
    314 W. Jefferson Street
    Tallahassee, Florida 32301
    Tel. (850) 222-8080
    Fax (850) 561-0836
    cookjv@gmail.com

-and-

SLATER LEGAL PLLC

By: */s/ James M. Slater*
    James M. Slater (FBN 111779)
    113 S. Monroe Street
    Tallahassee, Florida 32302
    Tel: (305) 523-9023
    james@slater.legal

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on March 16, 2023, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

By: */s/ James M. Slater*
    James M. Slater