UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GENARD DENEZ CHESTNUT,

    Plaintiff,

v.

COLIN WILLIAMS, *et al.*

    Defendants.

Case No. 3:22-cv-1349-BJD-LLL

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
BURGIN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND PLAINTIFF'S MOTION TO EXCLUDE EXTRINSIC EVIDENCE**

    Without conferral under Local Rule 3.01(g), Defendant Katherine Burgin has moved to dismiss Plaintiff's civil rights complaint against her for three reasons. (ECF No. 28). First, she claims that Plaintiff has not stated a claim for conspiracy, but the law provides otherwise; second, she claims—using incomplete information—that Plaintiff has not exhausted his administrative remedies, but the actual grievance documents attached to this response support exhaustion; and last, she asserts qualified immunity, which is not available to her as a private contractor. The Court should reject Burgin's arguments and exclude the impertinent exhibits and facts that have no bearing on this lawsuit and are not "central" to Plaintiff's claims.

## FACTUAL BACKGROUND

Plaintiff sued four corrections officers and two nurses involving an unconstitutional use of force and cover up in 2018. *See, generally*, Compl. Plaintiff has alleged that he was severely abused in December 2018. First, Sgt. Colin Williams punched Plaintiff and lodged a death threat in the holding area while camera operator Sgt. Robert Brown aimed the hand-held camera so that it did not record the abuse. Compl. ¶¶ 23–24. Second, Sgt. Robert Atteberry came by—although he had no business there—to tell Plaintiff: "We'll have you fucked up before you leave here"—referencing that Plaintiff was about to be transferred to another facility. *Id.* at ¶ 25. Next, Sgt. Williams threatened to "paint the cell red" with Plaintiff's blood, and he and Cpt. Steven Lola beat him with their fists. Sgt. Brown wrestled Plaintiff to the ground and beat him with a set of handcuffs, using them as brass knuckles, in such a way that a part of the open cuffs penetrated Plaintiff's rectum. Plaintiff lost control of his bowels, soiling his boxers. Cpt. Lola kicked Plaintiff in the head, chest, and face. Ofcr. Brown beat him with handcuffs; and Sgt. Williams beat Plaintiff and pounded his head on the floor. *Id.* at ¶¶ 26–28.

The assault was covered up by officers and Nurses Burgin and Singletary—the former, who "minimally treated" him, and the latter, who falsified post-use-of-force examination records. *Id.* ¶¶ 31–32. Plaintiff sued Nurse Burgin and the other defendants for conspiracy to violate his civil rights.

## MEMORANDUM OF LAW

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation omitted), which can allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). This "is not akin to a 'probability requirement'"—the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). The facts must allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Waldman*, 871 F.3d at 1289. The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,679(2009)). This approach applies to all Rule 8(a) pleadings—no heightened pleading standard exists for civil rights or municipal liability claims. See *Leatherman*

*v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

For the reasons stated below, the Court should deny Burgin's motion.

## I.     Burgin Cannot Rely on Extraneous Matters to Impugn Plaintiff.

In her argument, Burgin concedes that she would normally be confined to the four corners of the Complaint. ECF NO. 28 PageID 134; *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) (courts are "ordinarily barred from considering facts not alleged in the complaint or documents attached to a motion to dismiss"). Nonetheless, she presents the Court with what she calls "Introduction, Plaintiff's Background, and Factual Allegations," in which she goes well beyond facts or matters that could possibly be deemed "central" to the Complaint for evaluating its sufficiency. A document is not "central" to a plaintiff's complaint just because it may or may not contain relevant information or facts. *See Adamson v. Poorter*, No. 06-15941, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007) (unpublished).[1] In *Adamson*, the Eleventh Circuit held the district court erred by dismissing a prisoner's complaint by relying on defendant declarations filed with their motion to dismiss. Finding that defendants' declarations were not "central" to plaintiff's complaint, the court, relying on *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999)—which is binding precedent—held that the foundation of the ability to introduce documents at the dismissal stage "is that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint,

---

[1] Unpublished opinions may be cited as persuasive authority. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

4

the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment." *Adamson*, 2007 WL 2900576, at *3 (quoting *Bryant*, 187 F.3d at 1280, n.16.).

Here, Burgin invites the Court to consider Plaintiff's criminal offenses on the FDC Offender search page and that he has previously filed federal and state lawsuits against prison officials over the past decade. If permitted, inferences that could be drawn from these records include that Plaintiff is a vexatious litigant or that he has long been grossly abused in FDC's custody but has not become resigned to the mistreatment. Perplexingly (or, cynically, perhaps not), these are the initial matters Burgin wants the Court to consider, before even looking at particular facts alleged in the Complaint, and without any bearing on this matter—her view is that Plaintiff's shocking abuse and her acts to help cover up the abuse should be overlooked or given less weight because Plaintiff—a prisoner and criminal—has sought redress before.[2] This is not an idle digression; it is wholly improper. The Court should strike or exclude Section A of the Introduction to Burgin's motion titled "Plaintiff," as well as the attached exhibits. (ECF Nos. 28 PageID 131; 28-1 & 28-2).

---

[2] "'Let the jury consider their verdict,' the King said, for about the twentieth time that day. 'No, no!' said the Queen. 'Sentence first—verdict afterwards.'" Lewis Carroll, *Alice in Wonderland* (1865).

## II. Plaintiff Has Plausibly Stated a Claim for Conspiracy.

Plaintiff alleges that Burgin was not present at his post-use of force examination but nevertheless wrote a medical report that suggested she *was* there and that she was an additional witness to his condition at a time just after the use of force. Compl. ¶ 32. Plaintiff alleges that the others arranged for Burgin to falsify these records as part of a conspiracy to cover up correctional officers brutal parting attack on Plaintiff just prior to his transfer, and after other attacks.[3] This action can justify an inference that the purpose of her document was to bolster a fictitious medical record and to exculpate the officers who used force.[4] In support of her motion to dismiss, Burgin argues that the statement "it was arranged" for her to falsify a post-use of force examination does not satisfy the pleading requirements of a conspiracy—that "an overt act was committed in furtherance of the conspiracy." (ECF No. 28 PageID 136).

But the caselaw Burgin cites belies her argument. In *Grider v. City of Auburn*, the Eleventh Circuit stated that "[f]actual proof of the existence of a § 1983

---

[3] These correctional officers are alleged to have attacked another prisoner at Florida State Prison around the same time. *See Melendez v. Inch, et al.*, No. 3:20-cv-01023-BJD-JBT, ECF No. 134 (M.D. Fla. July 12, 2021) (describing how Colin Williams, Robert Atteberry, Robert Brown, and others brutally tortured a mentally ill prisoner and falsified records).

[4] This would not be the first time a Centurion nurse under FDC contract has falsified a medical record to exculpate correctional officers for inhuman torture. *See, e.g., Moss v. Dixon*, No. 3:21-cv-1026-MMH-MCR, ECF No. 69 (M.D. Fla. Oct. 17, 2022) (referencing allegations that a Centurion medical staff had falsified medical records reflecting that staff had directly witnessed a prisoner who had been beaten to the point of paralysis walk); *see also id.* at ECF No. 40-4 PageID 499 (admitting to Florida Department of Law Enforcement that a Centurion nurse falsified medical administration charts).

conspiracy may be based on circumstantial evidence." 618 F.3d 1240, 1260 (11th Cir. 2010) (citing *Burrell v. Bd. of Trs. of Ga, Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992); *United States v. Prince*, 883 F.2d 953, 957 (11th Cir. 1989) (knowing participation in a conspiracy can be inferred from circumstantial evidence).[5] In *D'Amico v. Montoya*, 3:20-CV-920-BJD-PDB, 2022 WL 833654 (M.D. Fla. Mar. 21, 2022) (Davis, J.), which Burgin also cites, this Court granted a motion to dismiss a conspiracy claim because the complaint offered no facts that the defendants communicated "or had opportunities to communicate with each other." *Id.* at *6. Instead, the allegations only asserted that the defendants attended an appointment together. Here, Nurses Burgin and Singletary worked in the same medical department at Florida State Prison and, although perhaps inartful, an "arrange[ment]" to falsify records to hide the attack is enough to show an agreement or opportunity to communicate for purposes of the conspiracy claim. *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). For purposes of this stage, Plaintiff has sufficiently alleged that Burgin participated in a conspiracy to cover up the brutal attack on Plaintiff. To the extent the Court disagrees, Plaintiff should be permitted leave to amend.

**III.    Plaintiff Exhausted His Administrative Remedies.**

Next, Burgin appends a log of Plaintiff's grievances to suggest that he has not

---

[5] *Grider* and various other cases cited by Burgin were nearly all decided at the summary judgment stage.

exhausted his administrative remedies. Burgin bears the burden of contradicting Plaintiff's allegation that he has satisfied the exhaustion requirements. *Turner v. Burnside*, 541 F. 3d 1077, 1082 (11th Cir. 2008).

Burgin argues that the only grievance Plaintiff filed around the time of his brutal beating was "returned" as noncompliant and therefore Plaintiff has not exhausted his administrative remedies. That argument is wrong. As a threshold matter, the Court should not consider the grievance log appended to Burgin's motion (ECF No. 28-3), because (1) it is an extract[6] that does not provide sufficient information to determine whether Plaintiff has fully exhausted his administrative remedies and (2) it is not "undisputed." Compl. ¶ 4; *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002).

To the extent the Court does intend to rely on Burgin's evidence to adjudicate the issue of exhaustion, the actual underlying grievances support exhaustion. Unlike the log, which states that Plaintiff's December 20, 2018 grievance was "returned" as noncompliant, the emergency grievance to the Secretary of FDC was actually "denied." *See* December 2018 Direct Emergency Grievance, attached as **Exhibit 1**. As this Court decided in *Miller v. Willis* just a few months ago—which Burgin fails to cite—"If a prisoner submits a grievance that does not comply with the grievance

---

[6] It is worth mentioning that these logs can only be obtained by FDC through a discovery request or public records request. Without Plaintiff's medical release—which has not been requested by Burgin—FDC would not produce this type of record without redaction for protected health information (PHI). It is unclear how Burgin—a private medical contractor—obtained this document without redaction, and improper that she filed it publicly without regard to Plaintiff's PHI.

8

process because it is late, filed at the wrong step, or is otherwise infirm, but the grievance is processed and substantively addressed, prison officials may not later challenge exhaustion on those procedural grounds. *Miller v. Willis*, 3:21-cv-832-BJD-MCR, at *6 (M.D. Fla. Feb. 23, 2023) (Davis, J.) (citing *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1215 (11th Cir. 2015) (agreeing with other circuits and holding "a procedural flaw ignored by a prison cannot later be resurrected . . . to defeat exhaustion")). In other words, in ruling on an exhaustion defense, a court may not enforce a procedural rule that prison officials themselves ignored when processing a grievance. *Id.* Because the grievance was denied and not returned, Burgin cannot claim that the formal grievance based on reprisal was rejected. Further, as the denial states, Plaintiff's complaint was turned over to the Office of the Inspector General. Once referred to OIG—without any instructions in the denial to seek further review— "Plaintiff was not required to pursue subsequent stages of the administrative grievance process or wait for the conclusion of the Inspector General's investigation." *Hardin v. Jones*, No. 3:18-CV-3-J-32JBT, 2020 WL 325649, at *4 (M.D. Fla. Jan. 21, 2020) (denying a motion to dismiss for want of exhaustion); *see also Luckey v. May*, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016) (finding that after the plaintiff filed emergency grievance and the emergency grievance was approved and referred to the Inspector General's Office for an investigation, the plaintiff was not required to wait until conclusion of investigation or seek an appeal before filing suit); *Lanier v. Smith*, No. 3:08-cv-833-J-12JRK, 2009 WL 1758904, at *1 (M.D. Fla. June 19, 2009) (denying motion to

9

dismiss for failure to exhaust, because the plaintiff's grievances were referred to the Inspector General's Office for review and consideration); *but see Hope v. Walker,* No. 5:13cv362/WS/CJK, 2015 WL 5190435, at *5 (N.D. Fla. Aug. 18, 2015) (referral of the plaintiff's formal grievance to the OIG did not satisfy exhaustion requirement because—unlike here—FDC's written response stated that the plaintiff may obtain further review by submitting an administrative appeal).

As to the substance of the grievance—it speaks to the claims at issue in this lawsuit, specifically the violence Plaintiff encountered on December 7, 2018. Because the formal grievance was fully exhausted by virtue of referral to OIG, this lawsuit should proceed. The fact that the grievance does not reference Burgin by name, or the conspiracy, is irrelevant. The Eleventh Circuit has not expressed or opined on such a requirement. *Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 26–27 (11th Cir. 2016) ("We have not addressed whether, to exhaust administrative remedies for purposes of the PLRA, an inmate's administrative grievance must have alleged the specific legal theory he later pursues in a § 1983 action."). Instead, the exhaustion requirement "is satisfied as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 219, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). Further, when a prison's grievance procedure is silent about the level of factual specificity required, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019). (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). "As in a pleading system, the

grievant need not lay out facts, articulable legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.* (quoting *Strong*, 297 F.3d at 650); *see also Johnson v. Testman*, 380 F.3d 691, 697 (2d. Cir. 2004) ("Uncounseled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading."). The Court should reject Burgin's exhaustion argument.

### IV. Burgin Is Not Entitled to Qualified Immunity.

Finally, Burgin argues that she is entitled to qualified immunity, and cites several cases for that proposition—all of which are meant to apply to public officials. However, it has long been established in the Eleventh Circuit that private health care contractors to public jails and prisons are *not* entitled to claim qualified immunity. *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) (agreeing that a private entity, which was a private corporation under contract to provide medical care to inmates at the county jail, was not entitled to assert a qualified immunity defense); *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999), amended, 205 F.3d 1264 (11th Cir. 2000) (holding that a "privately employed prison physician" was "ineligible to advance the defense of qualified immunity"); *O'Connor v. Jones*, No. 3:18-CV-1423-J-39PDB, 2021 WL 118982, at *3 (M.D. Fla. Jan. 13, 2021) (Davis, J.) (concluding that Nurse Singletary in another case was not entitled to qualified immunity as an "employee[] of the contracted medical provider" at FSP). Burgin's invocation of qualified immunity is simply contradicted by two decades of jurisprudence and must be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiff Genard Chestnut respectfully requests that the Court deny Defendant Katherine Burgin's motion to dismiss his complaint.

Dated: May 2, 2023.

                Respectfully submitted,

                */s/ James V. Cook*
                James V. Cook (FBN 0966843)
                LAW OFFICE OF JAMES COOK
                314 W. Jefferson Street
                Tallahassee, Florida 32301
                Tel. (850) 222-8080
                Fax (850) 561-0836
                cookjv@gmail.com

                    -and-

                */s/ James M. Slater*
                James M. Slater (FBN 111779)
                SLATER LEGAL PLLC
                113 S. Monroe Street
                Tallahassee, Florida 32302
                Tel. (305) 523-9023
                james@slater.legal

                *Attorneys for Plaintiff*

### Certificate of Service

I hereby certify that on May 2, 2023, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

                By: */s/ James M. Slater*
                      James M. Slater