**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

Gernard Denez Chestnut

    Plaintiff,

v.     **CASE NO.:** 3:22-cv-1349-BJD-LLL

Colin Williams, etc., et al.

    Defendants.
_____/

**DEFENDANT, ROSEANNA SINGLETARY, R.N.'S,
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Roseanna Singletary, R.N., pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby files her Motion to Dismiss Plaintiff's Complaint (Dkt. 1).

Plaintiff failed to state a cause of action against Nurse Singletary for the conspiracy to violate civil rights under 42 U.S.C. § 1983. Plaintiff did not plead any particularized facts about the existence of the alleged conspiracy. Plaintiff did not offer any facts suggesting that Nurse Singletary reached an agreement, or otherwise communicated about, a plan to deprive Plaintiff of his constitutional rights. Along these lines, the gravamen of the allegations against Nurse Singletary is that she "minimally treated" Plaintiff and failed to properly document Plaintiff's injuries

after an alleged assault by corrections officers; at best, these are allegations that sounds in medical malpractice or deliberate indifference, but not conspiracy.

Plaintiff also failed to timely and properly exhaust his administrative remedies prior to filing suit. Plaintiff did not file any grievances or appeals naming Nurse Singletary or addressing the allegations in the Complaint that Nurse Singletary minimally treated Plaintiff or otherwise failed to fully document his alleged injuries.

### Introduction, Plaintiff's Background, and Factual Allegations

A.  Plaintiff

Plaintiff, Gernard D. Chestnut, is a prisoner presently incarcerated at the Union Correctional Institute. *See* FDOC's Offender Search page, http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=130146&TypeSearch=AI (last visited June 2, 2023) (DC#130146). He was a state prisoner at the time of the allegations in the Complaint.

B.  Allegations

Plaintiff alleges that on December 7, 2018, he was at Florida State Prison ("FSP") in a holding cell awaiting transfer to Suwannee Correctional Institution. Dkt. 1 at ¶ 22. Plaintiff alleges that co-defendant correctional officers -- Sgt. Colin Williams and Sgt. Robert Brown -- struck Plaintiff and made threatening statements to him. *Id.* at ¶ 24. Later that day, Plaintiff alleges that co-defendant Sgt. Robert Atteberry made threatening statements, and that co-defendants Capt. Lola, Sgt. Williams, and Sgt. Brown entered the holding cell area, threatened Plaintiff, and beat

him to the point that Plaintiff lost control of his bowels, and was rendered unconscious. *Id.* at ¶¶ 25-29. Plaintiff alleges that he was escorted to "medical to receive stiches over his eyes," and that he suffered from facial swelling, chipped teeth, head injuries, dizzy spells and blurred vision. *Id.* at ¶ 30.[1] Plaintiff alleges that he was "minimally treated" by co-defendant "LPN Roseanna Singletary, who failed to fully document the injuries suffered by Plaintiff" in the alleged attacks above. *Id.* at ¶ 31. Nurse Singletary has been sued in her individual capacity.

After being treated by Nurse Singletary, Plaintiff alleges he was transferred to Suwannee C.I., whereupon "*it was arranged* for another nurse at FSP, LPN Katherine Burgin, to document a wholly fictitious account of the post use of force examination as if she had done it herself, although she was not even present at the examination at Florida State Prison." *Id.* at ¶ 32 (emphasis added).

Count VI is the only Count that involves Nurse Singletary. In Count VI, Plaintiff alleges that Nurse Singletary conspired to violate Plaintiff's civil rights under 42 U.S.C. § 1983 through unspecified "acts designed to achieve a personal goal and carry out a criminal purpose." *Id.* at ¶ 58.

As a result of "these defendants' unlawful acts," Plaintiff alleges that he has suffered emotional and physical injuries, and distress and pain. *Id.* at ¶ 59.

---

[1] Plaintiff further alleges that Sgt. Williams and Officer Brown later signed false discipline reports to cover-up the assault described in the Complaint.

-3-

In the Complaint, Plaintiff requested compensatory damages for physical injury and mental pain and suffering, punitive damages, and attorney's fees and costs under 42 U.S.C. § 1988 from Nurse Singletary. *Id.* at pg. 12 (A)-(E).

## MEMORANDUM OF LAW

### I.  Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. *See Iqbal*, 556 U.S. at 678.

In resolving a motion to dismiss under Rule 12(b)(6), a court ordinarily considers only the allegations within the four corners of the complaint and documents attached thereto. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F. 3d 1276, 1284 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1368 (11th Cir. 1997)). However, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment . . . if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002) (citing *Harris v. Ivax Corp.*, 182 F. 3d 799, 802 n.2 (11th Cir. 1999)). The same applies to a document attached to a plaintiff's response to a motion to dismiss. *Sosa v. Hames*, 218 F. App'x 976, 978 n.3 (11th Cir. 2007) (citing *Horsley*, 304 F. 3d at 1134; *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993)).

## II.    <u>Plaintiff Failed to Allege Any Specific Facts to Support a Conspiracy Involving Nurse Singletary</u>

To establish a § 1983 conspiracy claim, "a plaintiff must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights." *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010). "[T]he linchpin for conspiracy is agreement, which presupposes communication. . . ." *Bailey v. Bd. of Cty. Comm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992). *See also D'Amico v. Montoya*,

3:20-CV-920-BJD-PDB, 2022 WL 833654, at *1 (M.D. Fla. Mar. 21, 2022) (finding that inmate-plaintiff failed to offer any facts suggesting that prison healthcare providers reached an agreement to deprive plaintiff of his constitutional rights and granting motion to dismiss plaintiff's conspiracy claim).[2]

This is particularly important because the Eleventh Circuit recognizes that a "plaintiff claiming a conspiracy under § 1983 must make *particularized allegations* that a conspiracy exists." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 139 (11th Cir. 2011) (emphasis added).

There are no such particularized allegations regarding an agreement or communication in the Complaint. In fact, the Complaint indicates that Nurse Singletary "minimally treated" Plaintiff, and that Nurse Singletary failed to "fully document" the injuries Plaintiff allegedly suffered. There are no facts alleged which suggest that Nurse Singletary was part of any cover-up, let alone that she communicated with corrections officers to engage in a cover-up. While Plaintiff apparently faults Nurse Singletary for "minimal" treatment and failing to properly document injuries, these allegations, at best, are theories that sound in medical malpractice or perhaps deliberate indifference, but not conspiracy.

---

[2] *See also Fulwood v. Fed. Bureau of Prisons*, 568 Fed. Appx. 753, 757 (11th Cir. 2014) (citing *Bendiburg v. Dempsey*, 909 F. 2d 463, 468 (11th Cir. 1990)) (affirming district court's dismissal for failure to state a cause of action because prisoner's vague and conclusory allegations did not state a claim for conspiracy to violate his constitutional rights); *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F. 2d 405, 407 (11th Cir. 1985) ("In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint.")

Plaintiff offers no facts suggesting that Nurse Singletary (and others) reached an agreement to deprive Plaintiff of his civil rights. Plaintiff also failed to allege that Nurse Singletary communicated with any of the co-defendants in this case other than the exceedingly "conclusory, vague and general allegation" that "*it was arranged*" for Nurse Burgin -- not Nurse Singletary -- to falsely document a post-use of force examination report. *Kearson*, 763 F. 2d at 407.

Likewise, Plaintiff failed to allege an actual agreement between the so-called conspirators, the existence of a single plan, that the alleged co-conspirators shared in the general conspiratorial objective, or than an overt act was committed in furtherance of the conspiracy. In fact, it is not clear what role Nurse Singletary played in the alleged conspiracy other than the vague and conclusory claim that she treated the patient and failed to "fully document" Plaintiff's alleged injuries.

Here, Plaintiff has presented only conclusory allegations of conspiracy involving Nurse Singletary. He has offered no support for such allegations, in the form of affidavits from persons with personal knowledge attesting to Nurse Singletary's involvement in wrongful or malicious conduct towards Plaintiff.

Thus, Plaintiff's allegations of conspiracy are insufficient to state a claim for relief under § 1983. Accordingly, the conspiracy claim involving Nurse Singletary should be dismissed for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915A.

### III. Plaintiff Did Not Timely or Properly Exhaust His Administrative Remedies as to Nurse Singletary, the Allegations that Nurse Singletary Minimally Treated Plaintiff and/or Failed to Fully Document His Injuries

Plaintiff failed to timely and properly exhaust his administrative remedies regarding Nurse Singletary and the allegations that Nurse Singletary minimally treated him and otherwise failed to fully document his alleged injuries.

While Plaintiff has filed 178 grievance appeals, 514 formal grievances, and 543 informal grievances since 2018, Plaintiff failed to timely or properly follow the grievance procedures after the alleged December 2018 incident in the Complaint. **Exhibit "A,"** a summary printout of Plaintiff's grievance appeals, formal grievances, and informal grievances from 2018-2023.

The Prison Litigation Reform Act ("PLRA") requires that a plaintiff properly exhaust available administrative remedies before filing a § 1983 claim regarding prison conditions. *See* 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) (prisoners must exhaust administrative remedies before challenging the conditions of confinement, and the PLRA demands "proper exhaustion").

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F. 3d 1368, 1374 (11th Cir. 2008). *See also Jones v. Bock*, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, "[e]xhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court."

*Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (citing *Jones*, 549 U.S. at 211).

The PLRA also "requires **proper** exhaustion." *Woodford*, 548 U.S. at 90-91 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.

In *Turner v. Burnside*, the Eleventh Circuit established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F. 3d 1077, 1082 (11th Cir. 2008). First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response, and if they conflict, takes the plaintiff's version of the facts as true. *Id.* The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.*

Second, if the complaint is not subject to dismissal at the first step (where the plaintiff's allegations are assumed to be true), the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. *Id.* (citing *Bryant*, 530 F. 3d at 1373-74, 1376). Defendant bears the burden of proving that the plaintiff failed to exhaust his available administrative remedies. *Id.* (citing *Jones*, 549 U.S. at 216). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

State law "determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F. 3d 1204, 1207 (11th Cir. 2015). Indeed, "it is the prison's

requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 1211 (citing *Jones*, 549 U.S. at 218).

The Florida Department of Corrections ("FDOC") provides inmates with a three-step grievance process for exhausting administrative remedies that has been described by the Eleventh Circuit thusly:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. *Dimanche*, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. *See* Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. *See id.* § 33-103.011(4).

*Pavao*, 679 F. App'x at 824.

Section 33-103.011(1)(a) of the Florida Administrative Code, entitled "Time Frames for Inmate Grievances," mandates that informal inmate grievances "[m]ust be received within 20 days of when the incident or action being grieved occurred." Fla. Admin. Code Ann. r. 33-103.011(1)(a). Likewise, 33-103.011(b) mandates that formal grievances "[m]ust be received no later than 15 calendar days from: 1. The date on which the informal grievance was responded to; or 2. The date on which the incident or action being grieved occurred if an informal grievance was not filed. . . ." Fla. Admin. Code Ann. r. 33-103.011(1)(b). To properly appeal a formal

-10-

grievance denial, section 33-103.011 requires that the appeal to the Office of the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code Ann. r. 33-103.011(1)(c).

In the instant case, Plaintiff did not timely file any grievance or appeal that references Nurse Singletary or the allegations that Nurse Singletary minimally treated Plaintiff and failed to fully document his injuries.

Rather, Plaintiff filed a direct grievance to the Office of the Secretary in December 2018. *See* **Exhibit "B"** and ECF Doc. 29-1. In the direct grievance, Plaintiff described the alleged attack involving "Captain Lola, Sgt. R. Brown, and Sgt. Williams" and claimed that "these officers" later falsified "D.R.'s" related to the same.

There is no mention of Nurse Singletary (or Nurse Burgin), no reference to Nurse Singletary "minimally" treating Plaintiff, and no mention that Nurse Singletary failed to properly document his injuries in the December 2018 direct grievance. If Plaintiff believed that he received minimal treatment from Nurse Singletary or that Nurse Singletary failed to document his injuries, Plaintiff could have either included this in his December 2018 direct grievance, or filed a separate grievance directed to Nurses Singletary and Burgin.

Because Plaintiff failed to timely and properly exhaust his administrative remedies regarding Nurse Singletary and the allegations against her in the Complaint prior to filing suit, his Complaint should be dismissed.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I certify that this Motion to Dismiss complies with the twenty-five page limit and formatting requirements in Local Rule 3.01.

**WHEREFORE**, Defendant, Roseanna Singletary, RN, requests that this Court enter an Order Dismissing Plaintiff's Complaint for failure to state a cause of action for all of the reasons set forth above.

## CERTIFICATE OF SERVICE – CM/ECF

**I HEREBY CERTIFY** that on June 2, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic filing to counsel of record.

/s/ *Ethen R. Shapiro*
Ethen R. Shapiro (FBN 669881)
David W. Hughes (FBN 91482)
Hill Ward Henderson
P.O. Box 2231
Tampa, FL 33601-2231
(813)221-3900
(813)221-2900 - facsimile
Ethen.shapiro@hwhlaw.com
David.hughes@hwhlaw.com
*Attorney for Defendant Roseanna Singletary, RN*

18162517v1