UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GENARD DENEZ CHESTNUT,

        Plaintiff,

v.                                         Case No. 3:22-cv-1349-BJD-LLL

COLIN WILLIAMS, et al.,

        Defendants.
_____

## ORDER

### I. Status

Plaintiff, Genard Denez Chestnut, is a state inmate proceeding on a counseled complaint for damages against six individuals arising out of an alleged assault by officers at Florida State Prison (FSP) on December 7, 2018, and subsequent efforts to minimize or conceal the assault (Doc. 1). Plaintiff alleges the December 7, 2018 assault was only one of many at FSP, where he experienced "a pattern of abuse by a group of security officers who routinely indulge[d] in brutal acts against prisoners . . . in retaliation for . . . [writing] grievances on abuse." *See* Doc. 1 at 6. He brings the following claims under 42 U.S.C. § 1983: retaliation; excessive force; supervisor liability; failure to intervene; failure to protect; and conspiracy. *Id.* at 7-10. He also brings a claim

for abuse or neglect of a vulnerable adult under Florida Statutes section 415.1111. *Id.* at 11.

Before the Court are the following motions: (1) Defendants Williams, Lola, and Atteberry's Motion to Strike (Doc. 12), with Plaintiff's response in opposition (Doc. 16); (2) Defendant Burgin's Motion to Dismiss (Doc. 28), with Plaintiff's response in opposition (Doc. 29); and (3) Defendant Singletary's Motion to Dismiss (Doc. 35), with Plaintiff's response in opposition (Doc. 36).

## II. Motion to Strike

Defendants Williams, Lola, and Atteberry, who filed answers (Docs. 13-15), move to strike paragraphs 13-17 and 20-21 of the complaint under Rule 12(f) for containing "immaterial, impertinent, and scandalous matter." *See* Doc. 12 at 1-2. The contested allegations are set forth in the introductory facts section labeled, "Culture of Violence at [FSP]." *See* Doc. 1 at 2-4. Defendants claim these allegations are not only "immaterial, impertinent, and scandalous," but also "unsupported" and unrelated to Plaintiff's claims. *See* Doc. 12 at 2. In response, Plaintiff notes the allegations "provide the context and atmosphere for the specific allegations rendered against Defendants" or relevant and important background material. *See* Doc. 16 at 4-7.

Motions to strike generally are disfavored and usually denied unless the disputed allegations have "no possible relation to the controversy." *Augustus*

*v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962). *See also Seibel v. Soc'y Lease, Inc.,* 969 F. Supp. 713, 715 (M.D. Fla. 1997) ("Motions to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."). Upon review, the Court finds the allegations at issue cannot be said to have "no possible relation to the controversy." *See Augustus*, 306 F.2d at 868. As such, the motion to strike will be denied.

### III. Motions to Dismiss

Defendants Burgin and Singletary were nurses providing medical care for inmates at FSP at the relevant times. *See* Doc. 1 at 2. Plaintiff alleges Defendant Singletary "minimally treated [him] . . . [and] failed to fully document [his] injuries," and "it was arranged" for Defendant Burgin "to document a wholly fictitious account of the post use of force examination." *Id.* at 5-6. Plaintiff does not assert a deliberate indifference claim against the nurse-Defendants, but rather, he alleges they conspired with other Defendants to violate his constitutional rights "by acts designed to achieve a personal goal and carry out a criminal purpose," presumably to "cover-up the assault." *Id.* at 6, 10.

Defendants Burgin and Singletary seek dismissal of the conspiracy claim against them on the ground that Plaintiff makes "no particularized allegations

3

that a conspiracy exist[ed]." *See* Doc. 28 at 6; Doc. 35 at 6. They further argue he did not exhaust his administrative remedies. *See* Doc. 28 at 7; Doc. 35 at 8. Defendant Burgin, but not Defendant Singletary, invokes qualified immunity. *See* Doc. 28 11. Plaintiff counters that he alleges enough facts that, accepted as true, permit the reasonable inference a conspiracy existed, and he exhausted his administrative remedies. *See* Doc. 29 at 6-7; Doc. 36 at 3-5. He further argues Defendant Burgin cannot invoke qualified immunity because she was not a government official but rather a privately retained nurse under contract to provide medical services to inmates. *See* Doc. 29 at 11.

**A. Standard of Review**

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

4

## B. Exhaustion

The Prison Litigation Reform Act (PLRA) provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Although prisoners need not affirmatively "demonstrate exhaustion in their complaints," *Jones v. Bock*, 549 U.S. 199, 216 (2007), and "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (citing *Jones*, 549 U.S. at 211).

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. *Woodford*, 548 U.S. at 93. As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.* Generally, to properly exhaust administrative remedies, a Florida prisoner must timely complete a three-step process as fully set forth in the Florida Administrative Code (FAC). *See* Fla. Admin. Code rr. 33-103.001 through 33-103.018. Except for specific, enumerated issues, a prisoner generally must initiate the grievance process at the first step by filing an informal grievance

5

within "20 days of when the incident or action being grieved occurred." *See* Fla. Admin. Code rr. 33-103.005(1), 33-103.011(1)(a). If an informal grievance is denied, a prisoner must proceed to the second step of the process by filing a formal grievance at the institution within 15 days from "[t]he date on which the informal grievance was responded to." *See* Fla. Admin. Code rr. 33-103.006(1), 33-103.011(1)(b). The third and final step of the grievance process requires a prisoner to submit an appeal to the Office of the Secretary of the Florida Department of Corrections within 15 days "from the date the response to the formal grievance [was] returned to the inmate." *See* Fla. Admin. Code rr. 33-103.007(1), 33-103.011(1)(c).

A prisoner may bypass both the first and second steps of the process and "proceed directly to the Office of the Secretary" when seeking to grieve issues related to an emergency, a reprisal, protective management, reading material, sentence structure (such as release date), or his prison bank account. *See* Fla. Admin. Code rr. 33-103.005(1), 33-103.007(3). A grievance filed at any step of the process may be returned to the prisoner without action or processing for certain enumerated procedural deficiencies. *See* Fla. Admin. Code r. 33-103.014(1). But if a prisoner submits a grievance that does not comply with the grievance process because it is late, filed at the wrong step, or otherwise infirm, and the grievance is processed and substantively addressed, prison officials

6

may not later challenge exhaustion on those procedural grounds. *See, e.g., Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1215 (11th Cir. 2015) (agreeing with other circuits and holding "a procedural flaw ignored by a prison cannot later be resurrected . . . to defeat exhaustion"). In other words, in ruling on an exhaustion defense, a court may not enforce a procedural rule that prison officials themselves ignored or overlooked when processing a grievance. *Id.*

When confronted with an exhaustion defense, courts in the Eleventh Circuit employ a two-step process:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. . . . Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

*Id.* at 1209 (citing *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008)). Because failure to exhaust is an affirmative defense, the defendant bears the burden. *Turner*, 541 F.3d at 1082.

With supporting grievance records (Docs. 28-3, 35-1), Defendants Burgin and Singletary argue Plaintiff "failed to timely or properly follow the grievance procedures" because his one grievance about the incident was "returned," and it did not mention medical care, medical providers, or a cover-up. *See* Doc. 28 at 10-11; Doc. 35 at 11. Plaintiff disagrees, asserting he satisfied his exhaustion

7

obligation by timely filing a grievance directly to the Office of the Secretary on December 20, 2018, which was "denied," not "returned." *See* Doc. 29 at 10; Doc. 36 at 6. He provides a copy of the grievance appeal and response (Doc. 29-1).

Accepting Plaintiff's facts as true, the Court cannot resolve the exhaustion issue at the first step of the *Turner* analysis. At the second step of the *Turner* analysis, contrary to Plaintiff's suggestion, *see* Doc. 29 at 8, the Court may consider extrinsic evidence to resolve factual disputes, *see Bryant*, 530 F.3d at 1376 ("Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." (footnotes omitted)).

In his December 20, 2018 grievance appeal, Plaintiff complained that officer-Defendants Williams and Brown "beat[] [him] for several minutes with metal restraints . . . and [Defendant] Lola . . . kick[ed] [him] in [his] head and face with boots." *See* Doc. 29-1 at 2. He noted he was injured so badly that he needed stitches. *Id.* Additionally, Plaintiff complained the officer-Defendants fabricated disciplinary reports after-the-fact, reporting that he had been handcuffed in the front rather than the back. *Id.* The responding official noted

8

the grievance "was not accepted as a grievance of an emergency nature," but nevertheless Plaintiff's "appeal [was] reviewed and evaluated." *Id.* at 1. The responding official denied Plaintiff's grievance because "[t]he subject of [his] grievance was previously referred to the Office of the Inspector General [(IG)]." *Id.*

Accepting that Plaintiff timely filed his December 20, 2018 grievance appeal to complain about the December 7, 2018 assault, the Court concludes Plaintiff exhausted his administrative remedies for his claim that prison officials conspired "to cover-up a criminal assault." *See* Doc. 1 at 6. First, the grievance appeal was addressed on the merits, not returned on procedural grounds. Indeed, the responding prison official notified Plaintiff that "[t]he subject of [his] grievance [had been] referred to the [IG's Office]." *See* Doc. 29-1 at 1. The Court will not enforce a procedural bar effectively waived by the prison. *See Whatley*, 802 F.3d at 1215.

Moreover, when a prison official informs a prisoner that his grievance efforts resulted in his allegations having been reported to the IG's Office for investigation, the prisoner may be deemed to have exhausted his administrative remedies under the PLRA. *See, e.g., Tierney v. Hattaway*, No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022); *Ham v. Salmon*, No. 20-cv-81071-RAR, 2022 WL 1555080, at *6 (S.D. Fla. May

9

17, 2022); *Luckey v. May*, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016), *report and recommendation adopted sub nom.*, 2016 WL 1169481 (N.D. Fla. Mar. 22, 2016).

Finally, a prisoner is not required to name all would-be defendants or mention discrete potential civil rights claims in a grievance to properly exhaust his administrative remedies so long as he affords the agency a "full and fair opportunity" to address his issue on the merits. *See Jones*, 549 U.S. at 217; *Woodford*, 548 U.S. at 90. *See also Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 953 (11th Cir. 2016) ("The exhaustion requirement, allowing prison officials to address complaints in the first instance, is satisfied as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident.").[1] In his grievance, Plaintiff mentioned not only the assault by officers but also an attempt to cover it up through the falsification of records. *See* Doc. 29-1 at 2. Such information sufficiently put prison officials on notice of his complaint, which was referred to the IG's Office for investigation. As such, the Court finds Defendants fail to carry their burden to show Plaintiff did not exhaust his administrative remedies, and their motions will be denied as to that argument.

---

[1] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

### C. Conspiracy

Plaintiff names Defendants Burgin and Singletary only in Count VI, which is a conspiracy claim under § 1983. *See* Doc. 1 at 10. "A plaintiff claiming a § 1983 conspiracy must [allege] the defendants 'reached an understanding' to violate [his] constitutional rights." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010). "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992). As with any claim for the violation of a constitutional right, a conspiracy claim under § 1983 must be based on more than vague and conclusory allegations. *Allen v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 836, 840 (11th Cir. 2014) (citing *Twombly*, 550 U.S. at 555). "It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* (quoting *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)). *See also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Twombly*, 550 U.S. at 556 (holding, in the context of a conspiracy claim brought under the Sherman Act, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice").

Here, Plaintiff alleges "simply . . . that a conspiracy existed" as demonstrated by Defendants Burgin's and Singletary's "parallel conduct," i.e.,

11

misrepresenting or omitting facts in medical reports. *See Allen*, 578 F. App'x at 840; *Twombly*, 550 U.S. at 556. Plaintiff does not allege Defendants Burgin or Singletary personally participated in any communications or reached an agreement to violate his rights. *See Bailey*, 956 F.2d at 1122. Instead, he alleges Defendant Singletary—apparently acting alone—"failed to fully document [his] injuries," and "it was arranged" for Defendant Burgin "to document a wholly fictitious account of the post use of force examination." *See* Doc. 1 at 5-6. The allegation of an "arrange[ment]" suggests the interference by or participation of others in Defendant Burgin's conduct, but Plaintiff does not assert Defendant Burgin herself was involved in such an arrangement, nor does he specify what communications, if any, occurred to that end. *See id.* Additionally, Plaintiff does not allege Defendant Burgin willfully reached an understanding with others to violate his rights as opposed to being coerced or forced to falsify a record. *See id.* Accordingly, the Court finds Defendants' motions are due to be granted to the extent that Plaintiff fails to state a plausible conspiracy claim against them.[2]

---

[2] Defendant Burgin invokes qualified immunity. *See* Doc. 28 at 11. Plaintiff argues she is a private contractor, not a public official who may invoke qualified immunity. *See* Doc. 29 at 11. Defendant Burgin does not address her employment status in her motion to dismiss, *see* Doc. 28 at 12, but in her certificate of interested persons and corporate disclosure statement (Doc. 37), she acknowledges she was employed by Centurion at the relevant times. Given the Court's ruling on Defendant

In his counseled responses, Plaintiff requests leave to amend should the Court find he fails to state a plausible conspiracy claim against Defendants Burgin and Singletary. *See* Doc. 29 at 7; Doc. 36 at 5. This request is not properly before the Court because Plaintiff has not filed a motion seeking such relief, *see* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."), nor has he set forth the substance of any proposed amendment, *see Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) ("A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."). As such, the Court will not entertain the request but will dismiss the conspiracy claims against Defendants Burgin and Singletary without prejudice to afford Plaintiff an opportunity to submit a proper motion to amend if he so chooses.

Accordingly, it is now

**ORDERED:**

1. Defendants Williams, Lola, and Atteberry's Motion to Strike (Doc. 12) is **DENIED**.

---

Burgin's argument that Plaintiff fails to state a plausible conspiracy claim, the Court finds it need not address the qualified immunity argument.

13

2. Defendant Burgin's Motion to Dismiss (Doc. 28) is **GRANTED in part** to the extent that Plaintiff fails to state a plausible conspiracy claim against her.

3. Defendant Singletary's Motion to Dismiss (Doc. 35) is **GRANTED in part** to the extent that Plaintiff fails to state a plausible conspiracy claim against her.

4. The conspiracy claims against Defendants Burgin and Singletary are **DISMISSED without prejudice** subject to Plaintiff's right to file a proper motion to amend within **twenty days** of the date of this Order if he so chooses.

5. The **Clerk** shall terminate Defendants Burgin and Singletary as parties to this action.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of January 2024.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record